UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REYNAL L. CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 14-04013-399 |
| ) | |
| ALAN E. DEWOSKIN, ) | |
| ALAN E. DEWOSKIN, P.C., and ) | |
| THERESA CALDWELL LAVENDER, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST THE DEFENDANTS ON THE QUESTION OF LIABILITY,
AND GRANTING SUMMARY JUDGMENT TO DEFENDANTS**

This matter comes before me on the Plaintiff's Motion for Summary Judgment Against the Defendants on the Question of Liability (the "Summary Judgment Motion") filed by Reynal L. Caldwell (the "Debtor"). The Debtor sued Theresa Caldwell Lavender (the "Creditor"), Alan E. DeWoskin, and Alan E. DeWoskin, P.C. (together, the "Defendants") for an alleged violation of the automatic stay. By his Summary Judgment Motion, the Debtor seeks a judgment regarding the liability of the Defendants under §362(k) of Title 11 of the United States Code (the "Bankruptcy Code").

**BACKGROUND AND FACTS**

**A.   Background**

This action was originally commenced in the United States District Court for the Eastern District of Missouri by the filing of the Plaintiffs' Complaint for Violation of the Automatic Stay (the "Complaint"). On January 13, 2014, the district court referred this action to the United States Bankruptcy Court.

**B.   Material Facts Not in Dispute**

1. The Creditor is the former wife of the Debtor, and the Creditor now resides at 4461 Enright Ave, St. Louis, MO 63108.

> *See Defendants' Answer to Complaint* (the "Answer") at ¶ 6 and Plaintiff's Statement of Uncontroverted Facts in Support of Plaintiff's Motion for Summary Judgment

("Plaintiff's Statement of Facts") at ¶ 2; Defendant' Response to Plaintiff's Statement of Uncontroverted Facts and Additional Statement of Uncontroverted Facts ("Defendants' Response to Plaintiff's Statement of Facts").

2. Alan E. DeWoskin is an attorney and counselor at law. He is licensed to practice law in the state of Missouri, and does business as Alan E. DeWoskin, P.C., with offices located at 225 S. Meramec, Suite 426, St. Louis, MO 63105.

*See* Answer at ¶ 7; Plaintiff's Statement of Facts at ¶ 3; Defendants' Response to Plaintiff's Statement of Facts.

3. In this action, the Debtor sued Alan E. DeWoskin in his individual capacity and as an agent and representative of Alan E. DeWoskin, P.C.

*See* Answer at ¶ 8.

4. Alan E. DeWoskin, P.C. is named as a defendant in this action. The Debtor's claims against Alan E. DeWoskin are also made against Alan E. DeWoskin, P.C.

*See* Answer at ¶ 9.

5. Alan E. DeWoskin represented the Creditor as her attorney and counselor at law.

*See* Answer at ¶ 10.

6. On May 30, 2008, the Debtor filed a Petition for dissolution of his marriage to the Creditor, Cause Number 0822-FC00885, in the Twenty-Second Judicial Circuit Court of the City of St. Louis, Missouri (the "State Court").

*See* Answer at ¶ 11; Plaintiff's Statement of Facts at ¶ 4; Defendants' Response to Plaintiff's Statement of Facts.

7. On December 2, 2009, the State Court entered a Judgment of Dissolution of Marriage. The Judgment of Dissolution of Marriage was amended on February 22, 2010.   *See* State Court's Judgment & Order of Contempt.

8. In April, 2010, the Debtor appealed the divorce judgment to the Missouri Court of Appeals.

*See* Answer at ¶ 13.

9. In a May, 2011 opinion of the Missouri Court of Appeals, the court stated "on April 30, 2009 a dissolution of marriage action was tried before the trial court and an order was entered on December 2, 2009, which was amended in part on February 22, 2010. Pursuant to that order, [the Debtor] was ordered to pay [the Creditor] $2,500 per month in

2

maintenance, . . ., [and] $5,544.75 in [Creditor's] attorney's fees, . . . ."

*Caldwell v. Caldwell*, 341 S.W.3d 734, 735 (Mo. Ct. App. 2011).

10.　In the State Court's Judgment & Order of Contempt, the State Court found the Debtor to be in contempt of his obligations under the Judgment of Dissolution of Marriage and the Amended Judgment. The Judgment & Order of Contempt ordered the Debtor to:

> 1. Pay to [the Creditor] the sum of $20,000.00 plus 9% interest, as and for monthly maintenance payments that have accrued from December 2, 2009 to July 10, 2010. Said payment shall be made by August 10, 2010. [The Debtor] shall then begin regular maintenance payments on August 15, 2010 and the 15th of each month thereafter.
> . . .
> 5. Pay attorneys' fees to Alan E. DeWoskin, P.C., in the amount of $5,544.75 within interest at 9% from December 2, 2009 which is the previous attorneys' fee award from the original dissolution trial. Said payment shall be made by August 10, 2010.
>
> 6. Pay attorneys' fees to Alan E. DeWoskin, P.C. , in the amount of $1,935.50 which have accrued as a result of [the Debtor's] failure to comply with the financial obligations of the Judgment & Decree of Dissolution and the Amendment to same. Said payment shall be made by August 10, 2010.

Judgment & Order of Contempt dated July 16, 2010.

11.　On August 11, 2010, the Creditor (through her attorney) filed a Memorandum referring to the July 16, 2010 *Judgment & Order of Contempt*, and to the Debtor's "failure to comply with the Judgment of Dissolution of Marriage, the Amended Judgment and the Judgment & Order of Contempt." The Memorandum states that the Creditor "prays that the Court issue a warrant and commitment order for [the Debtor] to be issued forthwith."

Creditor's Memorandum.

12.　On August 17, 2010, the Debtor filed, in the United States Bankruptcy Court for the Eastern District of Missouri, a petition for relief under Chapter 13 of the Bankruptcy Code.

*See* Docket for Bankruptcy Case No. 10-49337-399.

13.　The Debtor was a debtor in Chapter 13 and Chapter 7 bankruptcy between August 17, 2010 and July 20, 2011.

*See* Docket for Bankruptcy Case No. 10-49337-399.

14.　No Chapter 13 plan was confirmed by the Debtor.

*See* Docket for Bankruptcy Case No. 10-49337-399.

3

15. On June 1, 2011, the Debtor's case was converted to Chapter 7, which case was dismissed on July 20, 2011.

> *See* Docket for Bankruptcy Case No. 10-49337-399.

16. The request for a warrant and commitment order against the Debtor was not withdrawn after the Debtor's bankruptcy filing.

> *See* State Court Docket; Judgment of Contempt dated August 27, 2010; August 24, 2010 and August 27, 2010 transcripts.

17. The Defendants were given notice of the Debtor's bankruptcy filing.

> *See* Certificate of Notice from Bankruptcy Noticing Center for Order and Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines.

18. An Order and Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines was mailed on August 20, 2010 by the Bankruptcy Noticing Center to the Creditor and Alan E. DeWoskin, P.C.

> *See* Certificate of Notice for Order and Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines.

19. The filing of the Debtor's bankruptcy petition constitutes an order for relief.

> *See* 11 U.S.C. § 301(b).

20. The filing of the Debtor's bankruptcy petition triggered the protections of Bankruptcy Code § 362(a).

> *See* 11 U.S.C. § 362(a).

21. On August 19, 2010, the Debtor filed a Petitioner's Suggestion of Bankruptcy with a copy of the Order and Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines issued by the bankruptcy court attached as Exhibit A (the "Suggestion of Bankruptcy"), in the State Court where the marriage dissolution and contempt proceedings were pending.

> *See* Suggestion of Bankruptcy; Answer at ¶ 21; Plaintiff's Statement of Facts at ¶¶ 16 and 17; Defendants' Response to Plaintiff's Statement of Facts.

22. The Debtor faxed a notice of the Suggestion of Bankruptcy to Alan DeWoskin.

> *See* Answer at ¶ 21.

23. The Suggestion of Bankruptcy made specific reference to the automatic stay.

> *See* Suggestion of Bankruptcy.

24.   No motion for relief from the automatic stay was filed by or on behalf of the Creditor.

   *See* Docket for Bankruptcy Case No. 10-49337-399.

25.   On August 24, 2010, seven days after the Debtor filed his bankruptcy petition, the State Court held a hearing on the Creditor's request for issuance of a warrant and commitment order.

   *See* August 24, 2010 transcript.

26.   The Creditor appeared at the August 24, 2010 hearing, and Alan E. DeWoskin represented the Creditor at that hearing.

   *See* August 24, 2010 transcript.

27.   At the August 24, 2010 hearing, Alan E. DeWoskin acknowledged that he had received notice of the Debtor's bankruptcy filing.  Mr. DeWoskin stated that he was not a bankruptcy lawyer, that he had consulted with bankruptcy lawyers, and that he would seek an order for relief from the automatic stay from the bankruptcy court.  Mr. DeWoskin also stated that he did not believe that the stay applied to the proceeding before the court.

   *See* August 24, 2014 transcript at p. 41, line 11 through p. 42, line 17.

28.   At the August 24, 2010 hearing, Mr. DeWoskin stated that the Defendants were "here today based upon [the State Court's] notice to determine what the court is going to do with regards to the failure of [the Debtor] to obey the court's order."

   August 24, 2014 transcript at p. 42, lines 19-22.

29.   At the August 24, 2010 hearing, Mr. DeWoskin cited case law as support for arguments regarding why the automatic stay did not apply.  In addition, Mr. DeWoskin stated to the State Court that the Defendants were:

> here to determine that the court has the right, as the Congress did not intend to strip non-bankruptcy courts of their inherent authority to enforce their own orders against parties that later filed for bankruptcy, by allowing parties to escape consequences of willfully disobeying said orders. [Bankruptcy Code § 362(a)].  And we are here to hear your judgment or decision on what you're going to do.
>
> August 24, 2010 transcript at p. 41, line 18 through p. 42, line 3 and 42, line 23 though p. 43, line 7.

30.   During the August 24, 2010 hearing, Mr. Dewoskin and the Creditor both stated to the State Court that they had not received any payment from the Debtor since the marriage

5

dissolution judgment was entered.

*See* August 24, 2014 transcript at p. 44, lines 3 -15.

31. The Debtor appeared with his counsel at the August 24, 2010 hearing. Counsel to the Debtor stated at that hearing that he was not a bankruptcy lawyer, but that he believed the automatic stay applied to the issues before the State Court.

*See* August 24, 2010 transcript at p. 44, line 18 through p.45, line 16.

32. The State Court continued the August 24, 2010 hearing to August 27, 2010, and stated that:

> the court's intent, at least at this point, is to have [the Debtor] incarcerated if I believe after reviewing the case law and the precedent of the bankruptcy court that I have the ability to do that. I don't want to shoot from the hip today, and the bankruptcy has certainly thrown me a bit off course, because I am not sure the court has that authority.

> August 24, 2010 transcript at p. 48, lines 19-23 and p. 49, lines 1-8.

33. On August 24, 2010, the State Court made the following entry on its docket:

> Cause called, heard and submitted. Petitioner shall appear before this court, and the Court will decide at that time if Petitioner shall be taken into custody due to his failure to comply with the court's previous Judgment of Dissolution and Contempt. So Ordered: Judge Robin Ransom Vannoy

> State Court Docket.

34. The Debtor appeared at the August 27, 2010 hearing with both his bankruptcy attorney and his state law attorney. Both attorneys made argument regarding the applicability of the automatic stay. The State Court also noted that "[b]oth attorneys [the Debtor's state law attorney and his bankruptcy attorney] have filed with the court memorandums of law with regards [*sic*] to whether or not the bankruptcy filed by [the Debtor] acts as a stay to the orders contained in the court's judgment of dissolution and subsequent judgment and order of contempt."

August 27, 2010 transcript at p. 50, lines 19-24.

35. The Creditor and Alan E. DeWoskin did not appear at the August 27, 2010 hearing.

*See* August 27, 2010 transcript.

36. On August 27, 2010, the State Court stated:

> The court has listened to the argument of both the domestic attorney, . . . and the bankruptcy attorney . . ., both present on behalf of [the Debtor].

6

> The court has reviewed the statutes pertinent to this matter, and the bankruptcy code and statutes that [the bankruptcy attorney] provided to the court.
>
> The court does not share [the bankruptcy attorney's] opinion that this court cannot proceed because there was a stay filed by [the Debtor] in the bankruptcy court.
> . . .
>
> Having listened to argument of all counsel, and having reviewed this record and the pertinent statutes, the court does find that [the Debtor] is in contempt of this court.

August 27, 2010 transcript at p. 63, line 18 through p. 64, line 22.

37. On August 27, 2010, the State Court entered a Judgment of Contempt which found the Debtor to be guilty of indirect civil contempt, and stated that to compel compliance with the State Court's orders, the Debtor was "sentenced to imprisonment in the St. Louis City Jail and/or . . . ordered to pay to [Creditor] the sum of $22,500.00 until [the Debtor] elects to adhere to this Court's Order of December 2, 2009 directing that he make monthly maintenance payments in the amount of $2,500.00." The State Court also entered a separate Commitment Order, stating that the Sheriff of the City of St. Louis, Missouri was "commanded to attach [the Debtor] and commit him to the jail of the City of St. Louis until such time as he has purged himself of this contempt by paying in full the sum of $22,500.00 and he has been ordered discharged."

> Judgment of Contempt dated August 27, 2010; Commitment Order dated August 27, 2010; *see also Caldwell v. Caldwell*, 341 S.W.3d 734, 736-737 and n.1 (Mo. Ct. App. 2011).

38. The Debtor was imprisoned after the August 27, 2010 hearing and entry of the Judgment of Contempt dated August 27, 2010.

> *See* Declaration of Reynal Caldwell.

39. On September 14, 2010, the State Court made the following entry on its docket:

> Petitioner and Respondent appear with counsel. As stated in the Judgement & Order of Contempt entered by the Court on July 16, 2010, maintenance payments are due on the 15th of wach [*sic*] month. Therefore, the next maintenance payment is due on September 15, 2010. If Petitioner fails to pay the maintenance payment of $2,500.00 on September 15, 2010, an emergency hearing for contempt will be set within 1 week upon application

of Respondent. At the hearing, the Court will issue a commitment order if petitioner is found to be in contempt. So ordered: Judge Robin Ransom Vannoy

State Court Docket.

40. In September, 2010, the Debtor appealed the State Court's Judgment of Contempt and Commitment Order to the Missouri Court of Appeals.

*See* Answer at ¶ 39.

41. On September 27, 2010, a document titled Information Statement to Circuit Clerk for Collection and Disbursement of Maintenance and/or Support by the Family Support Payment Center, was filed in the State Court and signed by counsel for the Creditor on the first page. The second page, called Income Withholding for Support includes a request for a wage withholding of the Debtor by the Defense Finance and Accounting Service, but the only request is for withholding of $2,500 each month for "current spousal support." In his Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and in Support of Issuance of Partial Summary Judgment Against Defendants as to Liability, filed in this action, the Debtor stated that an Income Withholding Order filed with the court on September 27, 2010 indicates that the withholding order only requests withholdings for current spousal support.

*See* Information Statement to Circuit Clerk for Collection and Disbursement of Maintenance and/or Support by the Family Support Payment Center; Income Withholding for Support; Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and in Support of Issuance of Partial Summary Judgment Against Defendants as to Liability at p. 20.

42. On November 9, 2010, the State Court stated that it "stay[ed] the wage withholding application and order dated 9/24/10 and filed on 9/27/10." It also directed the Defense Finance and Accounting Services to refrain from withholding "any wages for maintenance/spousal support" from the Debtor.

November 9, 2010 Order.

43. On November 15, 2010, the State Court filed a document titled Income Withholding for Support, which listed the amount to be withheld by the Defense Finance and Accounting Service from the Debtor's wages as $0.

*See* Income Withholding for Support dated November 15, 2010.

8

44. In March, 2011, the Missouri Court of Appeals affirmed the December, 2009 Judgment of Dissolution of Marriage (as amended), from which the Creditor's claims arose.

   *See Caldwell v. Caldwell*, 336 S.W.3d 201 (Mo. Ct. App. 2011).

45. In April, 2011, the State Court entered a Pay Out Order, stating that "[o]n November 9, 2010, [the Debtor] deposited $25,000.00 into the Registry of the City of St. Louis Circuit Court pursuant to a Supersedeas Bond pending the final outcome of the appeal in the [divorce] case."

   Pay Out Order dated April 28, 2011.

46. In the State Court's Pay Out Order, the court found that "[the Debtor] testified in a deposition that he posted the appeal bond and the money came from his personal friends." The Pay Out Order also stated:

   > It is ordered that upon the Application of Respondent Theresa Caldwell k/n/a Theresa Lavender, the sum of $25,000.00 is ordered to be paid out from the Registry of the Court to Theresa Caldwell k/n/a Theresa Lavender. . . .

   Pay Out Order dated April 28, 2011, and Exhibit A thereto.

47. The transcript from an examination of the Debtor in his bankruptcy Case No. 10-49337-399, includes testimony from the Debtor that he obtained the money for his appeal bond from personal friends.

   *See* January 19, 2011 transcript of examination in Bankruptcy Case No. 10-49337-399 at p. 34, line 23 through p. 35, line 5.

48. In May, 2011, the Missouri Court of Appeals issued an opinion, reversing the August 27, 2010 State Court Judgment of Contempt and Commitment Order.

   *See Caldwell v. Caldwell*, 342 S.W.3d 734 (Mo. Ct. App. 2011).

49. In his appeal of the State Court's August 27, 2010 ruling to the Missouri Court of Appeals, the Debtor included in his brief an argument that the State Court's entry of its Judgment of Contempt and Commitment Order violated the automatic stay. The Missouri Court of Appeals reversed the State Court's ruling on other grounds and it did not make a holding with respect to the automatic stay. The Missouri Court of Appeals specifically stated that it did not need to address the third argument of the Debtor, which was the automatic stay issue according to the Debtor's brief.

   *See* Amended Brief of Appellant Reynal Caldwell; *Caldwell v. Caldwell*, 342 S.W.3d

9

Case 14-04013 Doc 38 Filed 06/27/14 Entered 06/27/14 12:08:43 Main Document
Pg 10 of 16

734 (Mo. Ct. App. 2011).

50. The Debtor's bankruptcy case was dismissed on July 20, 2011. On August 4, 2011, the Debtor's case was closed.

*See* Docket for Bankruptcy Case No. 10-49337-399.

## DISCUSSION

I have statutory authority over this matter pursuant to 28 U.S.C. §§1334(b), 157(b)(2)(A). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). I also have authority under Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. In addition, I have constitutional authority over this matter, which is brought and arises only under Bankruptcy Code § 362(k). Accordingly, I may enter appropriate orders and judgments. *See* 28 U.S.C. § 157(b)(1).

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a), applicable pursuant to Fed. R. Bankr.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Pursuant to Federal Rule of Civil Procedure 56(f), made applicable by Federal Rule of Bankruptcy Procedure 7056, "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant. . . ."

### A. **Bankruptcy Code § 362**

The basis of the Debtor's action is alleged violations of the automatic stay by the Defendants. The Debtor seeks summary judgment regarding the Defendants' liability for such alleged stay violations. And through the Complaint, the Debtor ultimately seeks damages. Although the Debtor does not separately categorize the alleged stay violations in his Complaint or summary judgment papers, the violations fall into three categories, all of which are attempts to enforce the Debtor's obligations under the State Court's previous orders. They are actions connected to the: (1) August 24, 2010, August 27, 2010 and September 14, 2010 hearings and the August 27, 2010 Judgment of Contempt; (2) wage withholding of the Debtor; and (3) Pay Out Order.

Upon the filing of a bankruptcy petition, the automatic stay goes into effect, staying "a variety of acts to collect or otherwise enforce a pre-petition debt." *Marino v. Seeley (In re Marino)*, 437 B.R. 676, 678 (B.A.P. 8th Cir. 2010); 11 U.S.C. § 362(a). Bankruptcy Code

10

§ 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). For a §362(k) recovery, "the debtor must show that the creditor's violation of the automatic stay was willful and that the violation injured the debtor." *Garden v. Central Neb. Housing Corp.*, 719 F.3d 899, 906 (8th Cir. 2013) (citing *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 628 (8th Cir 1991)). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989).

**B.   Rooker-Feldman**

The *Rooker-Feldman* doctrine bars me from considering whether the automatic stay applied to the Defendants' actions and, therefore, there is no basis upon which I could rule in favor of the Debtor under § 362(k). Under the *Rooker-Feldman* doctrine, lower federal courts lack jurisdiction over challenges to decisions of state courts in judicial proceedings. "*Rooker-Feldman* doctrine is limited to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before district court proceedings were commenced and inviting district court review and rejection of those judgments." *Smith v. State of Mo. (In re Smith),* 530 Fed. Appx. 616 (8th Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005)). A lower federal court is not permitted to consider claims that are "inextricably intertwined" with the claims that are decided in the state court. *Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 329 F.3d 948, 950-951 (8th Cir. 2003) (quoting *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (8th Cir. 1999) (quotation marks and citations omitted). "*Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." *Hoffinger*, 329 F.3d at 951 (quoting *Snider v. City of Excelsior Springs, Mo.,* 154 F.3d 809, 811 (8th Cir. 1998)).

An analysis under § 362(k) requires me to consider whether the automatic stay applied to the Defendant's actions in the first instance. *See Marino*, 437 B.R. at 678 ("To prevail under § 362(k), the debtor must show: (1) the creditor violated the automatic stay;

11

(2) the violation was willful; and (3) the debtor was injured by the violation.") (citing *Honeywell, Inc.*, 930 F.2d at 628). However, the issue of whether the automatic stay applied to the Defendants' attempts to enforce the Debtor's obligations in the State Court's previous orders was thoroughly presented and argued before the State Court by the parties, and the State Court decided that issue.

Argument was made by Alan E. DeWoskin at the August 24, 2010 hearing on the request for the issuance of a warrant and commitment order regarding why the Defendants believed the automatic stay did not apply. At the same hearing, counsel to the Debtor stated a belief that the stay applied. It was after these events that the State Court continued the hearing to August 27, 2010, and indicated that it would review the bankruptcy law materials and it would have the Debtor incarcerated if the court then believed it had the authority to do so.

At the continued hearing on August 27, 2010, the Debtor's bankruptcy attorney and his state law attorney both appeared and argued regarding the applicability of the automatic stay (and both attorneys submitted written memoranda of law prior to the hearing). The State Court then stated:

> The court has listened to the argument of both the domestic attorney, . . . and the bankruptcy attorney . . ., both present on behalf of [the Debtor]. The court has reviewed the statutes pertinent to this matter, and the bankruptcy code and statutes that [the bankruptcy attorney] provided to the court.
>
> The court does not share [the bankruptcy attorney's] opinion that this court cannot proceed because there was a stay filed by [the Debtor] in the bankruptcy court.
> . . .
>
> Having listened to argument of all counsel, and having reviewed this record and the pertinent statutes, the court does find that [the Debtor] is in contempt of this court.

August 27, 2010 transcript at p. 63, line 18 through p. 64, line 22. On August 27, 2010, the

12

State Court entered the Judgment of Contempt and the Commitment Order.[1]

The effect of a ruling by me on § 362(k) would be to void or reverse the decision by the State Court that the automatic stay did not apply, an action I am not permitted to take according to the *Rooker-Feldman* doctrine.  *See, e.g., Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559, 560 (8th Cir. 2000) (affirming application of *Rooker-Feldman* to discharge issue, rejecting view of *Rooker-Feldman* that federal court could attack incorrect state court construction of discharge, and agreeing with the reasoning of *Singleton v. Fifth Third Bank of W. Ohio (In re Singleton)*, 230 B.R. 533 (B.A.P. 6th Cir. 1999), in which state court order regarding applicability of automatic stay was not subject to collateral attack).

Without the authority to change the State Court's ruling that the automatic stay did not apply, it would be impossible for me to rule that there was a cause of action under § 362(k).

## C.  Additional Support

The *Rooker-Feldman* doctrine bars me from considering whether the stay applied to any of the actions of the Defendants challenged by the Debtor, not only those in connection with the August 24, 2010, August 27, 2010 and September 14, 2010 hearings and the August 27, 2010 Judgment of Contempt.  The State Court's ruling necessarily extended to the actions connected to the wage withholding and the Pay Out Order as they were part of the effort to enforce the State Court's earlier rulings, and were "inextricably intertwined" with the State Court's decision to proceed with the Defendants' request for issuance of a warrant and commitment order. Moreover, the wage withholding and pay out were accomplished through orders of the State Court after it considered the parties' arguments about the automatic stay.  I cannot sit in review of the State Court's decisions.  Therefore, there is no basis upon which I could rule in the Debtor's favor under § 362(k) with respect to any of his allegations in the Complaint.

---

[1] I see no basis upon which the ruling of the Missouri Court of Appeals, reversing the State Court's ruling on other grounds and specifically stating that court did not need to address the automatic stay argument, limits the applicability of the *Rooker-Feldman* doctrine to this action.

13

Nevertheless, I note additional support, based on the summary judgment record, why the stay did not apply (and therefore there was no action under § 362(k)), in connection with the wage withholding and Pay Out Order proceedings.

Subsection (b) of Bankruptcy Code § 362 excepts from the scope of the automatic stay:

> (2) . . .
>    (B) . . . the collection of a domestic support obligation from property that is not property of the estate;
>
>    (C) . . . the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute.

11 U.S.C. § 362(b)(2)(B) and (C).

The wage withholding proceedings fall squarely within § 362(b)(2)(C). The only withholding initiated by the Defendants was for payment of "current spousal support," which is a domestic support obligation under Bankruptcy Code § 101(14A). And it is undisputed that the withholding was obtained through a court order.

In addition, the Pay Out Order (of the $25,000 bond) would not present a stay violation because, as the Debtor testified, the money came from his friends. Therefore, it was not the Debtor's property and not property of his bankruptcy estate. And the Pay Out Order specified that the money from the appeal bond went to the Creditor. Nothing in the Pay Out Order provided for funds to go to the other Defendants. It is undisputed that the debt owed to the Creditor from the debtor was maintenance. Maintenance is a domestic support obligation. Therefore, the actions in connection with the Pay Out Order were excepted from the automatic stay under § 362(b)(2)(B).

Moreover, the Debtor committed a stay violation when he appealed the State Court's ruling post-petition. *See Farley v. Henson*, 2 F.3d 273 (8th Cir. 1993) (automatic stay applied to appeal brought by debtors from judgment obtained against them as defendants).

The issue that I find to be determinative, whether the automatic stay applied, was

14

necessarily already raised and encompassed in the arguments by the parties,[2] the facts supporting my ruling are derived from the documents that are part of the summary judgment record (many of which were submitted by the Debtor), and the Debtor had ample notice and an opportunity to conduct discovery and make relevant legal arguments. Therefore, I will grant summary judgment to the Defendants on the Debtor's Complaint. *See* FED. R. CIV P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant. . . .").[3]

## CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Plaintiff's Motion for Summary Judgment Against the Defendants on the Question of Liability, shall be denied. It is further

**ORDERED** that summary judgment shall be entered in favor of the Defendants, Alan E. DeWoskin, Alan E. DeWoskin, P.C., and Theresa Caldwell Lavender, on the Plaintiff's Complaint for Violation of the Automatic Stay in that the Plaintiff's Complaint for Violation of the Automatic Stay shall be dismissed.

DATED: June 27, 2014

St. Louis, Missouri

Barry S. Schermer
United States Bankruptcy Judge

---

[2] For example, the Debtor's argument under § 362(k) relied on a determination that the stay applied, the Defendants argued in their response to the Summary Judgment Motion that the State Court ruled that the automatic stay did not apply, and, in footnote 3 of their response, the Defendants noted the applicability of the *Rooker-Feldman* doctrine.

[3] Because the Debtor cannot prove a case for liability, there is no need for me to separately analyze the issue of damages, and I do not address any alleged facts regarding damages.

15

Copies to:

Elbert A. Walton, Jr.
Metro Law Firm, LLC
2320 Chambers Road
St. Louis, Missouri 63136

Reynal Caldwell
2525 Shannon Ave.
Jennings, MO 63136

Christopher Victor Daming
WUESTLING AND JAMES, L.C.
720 Olive Street
Suite 2020
St. Louis, MO 63101

Susan M. Dimond
WUESTLING AND JAMES, L.C.
720 Olive Street
Suite 2020
St. Louis, MO 63101

Office of the U. S. Trustee
111 So. 10th Street, Suite 6353
St. Louis, MO 63102